SLATER STEEL, INC., Plaintiff,

v.

VAC–AIR ALLOYS CORPORATION, Defendant.

No. CIV–85–541E.

United States District Court, W.D. New York.

May 31, 1985.

Barry H. Singer, New York City, for plaintiff.

Joseph D. Bermingham, Jr., Buffalo, N.Y., for defendant.

MEMORANDUM and ORDER

ELFVIN, District Judge.

In this action under Fed.R.Civ.P. rule 34(c) seeking access to the plant of defend-

is allowed. *Preston v. Heckler*, 596 F.Supp. 1158, 1161 (D.Alaska 1984).

ant Vac-Air Alloy Corporation ("Vac-Air") in Frewsburg, N.Y., for the purposes of inspection, photographing and videotaping portions of said premises and activities occurring therein, Vac-Air has moved for a protective order denying plaintiff access to its facilities and also for an order quashing certain subpoenas duces tecum that have been served upon three of its employees by plaintiff. The discovery sought by Slater Steel, Inc. ("Slater") relates to an action pending in the United States District Court for the District of Oregon *viz., Western Smelting & Metals, Inc. v. Slater Steel, Inc., et al.,* CIV–84–1046—wherein fraud and contractual claims have been brought against Slater. The principal allegations raised by Western Smelting & Metals, Inc. ("Western") in such action are that Slater, by its subsidiary company, had made misrepresentations to Western during the course of their business dealings and had understated amounts due and owing Western for metals recovered by Slater from scrap that had been supplied to it by Western.

In the case at bar, Vac-Air, a non-party as far as the Oregon litigation is concerned, has requested protection from Slater's sought discovery on the grounds that the two companies are direct competitors, that the sought disclosure would reveal to Slater Vac-Air's secret processes, developments and research and that such disclosure is not relevant or necessary to the determination of any of the issues in the Oregon action. In support of its motion Vac-Air has submitted affidavits from its President, Daniel C. Weinstein, and its Vice-President, Earl Griffith, which aver that during the past several years Vac-Air has been engaged in the development of highly secretive methods and processes for the recovery of valuable metals from the scrap by-product of casting and other production operations. It is asserted that Vac-Air obtains large quantities of scrap metal from sources such as Western which it melts and analyzes. Then, utilizing its secret processes, Vac-Air is able to extract a higher than average percentage of the metals contained in the scrap, thereby result-

ing in larger payments to suppliers of the scrap than would be paid by Vac-Air's competitors. In addition, it is contended that Vac-Air's superior methods for removing contaminants such as slag and dirt from the scrap enables it to deliver to its ultimate customers a higher grade of processed scrap.

Slater has not contested the confidential and trade secret nature of Vac-Air's processes and methods yet has contended that disclosure of such is required in order for Slater to be able adequately to defend itself in the Oregon action. Slater has stated that Western will attempt to prove its fraud and contract claims by establishing that Slater and Vac-Air had bought substantially similar scrap metal from it, that both companies had paid Western based upon the number of pounds of nickel, chrome and molybdenum that was able to be extracted from the scrap and that Vac-Air had reported greater quantities of extractions to Western than had Slater and therefore had paid Western more for similar loads of scrap. It is contended by Slater that the introduction of such evidence during the trial of the Oregon action would raise an inference that Slater had committed some impropriety in its reporting of extraction levels and its payments to Western. Accordingly, Slater has asserted herein that it needs the discovery sought by this action and by the deposition subpoenas served upon Vac-Air's employees in order to establish at trial in Oregon that, due to Vac-Air's unique processes, the results of its extractions from Western's scrap do not establish any fraud or misconduct by Slater in its reporting and payments to Western.

Having considered the affidavits, memorandums and arguments submitted by the parties regarding this matter, this Court finds that Vac-Air is entitled to a protective order denying Slater access to Vac-Air's facility and quashing the three deposition subpoenas duces tecum that previously had been served upon Vac-Air employees Weinstein, Griffith and Dennis Trostle. Slater expressly has acknowledged the intrusive

nature of its discovery requests and Vac-Air's legitimate and strong interest in maintaining its commercial secrets, yet Slater has not established, by the submission of affidavits or otherwise, that its need for the sought discovery outweighs Vac-Air's interest in non-disclosure. Rather, Slater's position assumes that Western would be permitted to introduce as evidence in the Oregon trial Vac-Air's extraction reports without having first laid a proper evidentiary foundation with respect to the relevancy of such reports—namely, that the processes utilized by Vac-Air and Slater had been of comparable nature and thereby permitting a finding of probativeness as to Vac-Air's results.[1] In addition, Slater has not sufficiently demonstrated to this Court that it is not feasible for it to defend itself in the Oregon action by presenting expert testimony, aside from any evidence derived from discovery of trade secrets of Vac-Air, which would establish that any differences in extraction reports well could have resulted from variances in the composition of scrap loads or differences in the sorting, grading and laboratory analysis processes used by the various companies in Slater's field.

Vac-Air has demonstrated that the information sought to be protected is highly confidential commercial matter, that disclosure would cause it significant harm and that there exists good cause for invoking this Court's protection from the discovery sought by Slater.

"While discovery is a valuable right and should not be unnecessarily restricted * * *, the 'necessary' restriction may be broader when a nonparty is the target of discovery. As one district court has noted, '[t]here appear to be quite strong considerations indicating that ... discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents.'" *Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir.1980) (quoting from *Collins and Aikman Corporation v. J.P. Stevens & Co.*, 51 F.R.D. 219, 221 (D.S.C.1971).[2]

Accordingly, it is hereby ORDERED that Vac-Air's motion for a protective order denying Slater access to its plant and quashing the deposition subpoenas duces tecum served upon Weinstein, Griffith and Trostle is granted and that Vac-Air's request for its attorney's fees and costs incurred in connection with this action is denied.

---

1. Vac-Air has contended that it is Western that will bear the burden of proof in the Oregon action and that the serious charges of fraud raised therein could not likely be proven solely upon the basis of an inference raised by Vac-Air's extraction reports. While such contention appears to this Court to be well-founded, such determination must be made by the United States District Court for the District of Oregon.

2. The principal cases relied upon by Slater—*Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868 (7th Cir.1966), and *Covey Oil Company v. Continental Oil Company*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed. 155 (1965)—are distinguishable as not involving secret processes, formulas or methods and due to the establishment in such actions of the relevance and need for the materials sought by the party seeking discovery from a non-party.