**BLOUNT INTERNATIONAL, LTD.**

v.

**SCHUYLKILL ENERGY RESOURCES INCORPORATED, et al.**

Civ. A. No. M.B.D. 88–729.

United States District Court,
D. Massachusetts.

April 19, 1989.

David J. Buczkowski, Ann M. Monzione, Lecomte, Emmanuelson, Tick & Doyle, Boston, Mass., Kenneth M. Cushman, Joyce K. Hackenbrach, Sharon R. Buckingham, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Macbeth Wagnon, Jr., Charles L. Grizzle, Jr., Bradley, Arant, Rose & White, Birmingham, Ala., for Blount Intern.

Bruce F. Smith, Boston, Mass., John M. Elliott, George A. Reihner, James P. Kil-

coyne, Baskin, Flaherty, Elliott & Mannino, P.C., Philadelphia, Pa., for SER.

Charles L. Janes, Bingham, Dana & Gould, Boston, Mass., for Bank of New England & Michael McCabe.

## MEMORANDUM AND ORDER ON DEFENDANTS' OBJECTIONS TO MAGISTRATE'S ORDER OF MARCH 13, 1989

MAZZONE, District Judge.

After review of the entire record presented to me, I conclude the Magistrate's Order of March 13, 1989 is entirely proper and will be affirmed.

Although I sit in review from a more removed position, the shrill, unflattering and pejorative presentations came through clearly to me. In the face of that atmosphere, the Magistrate delivered a thorough and well-reasoned Memorandum and Order, ruling properly on the merits of the discovery dispute, and entirely consistently with the Supreme Court's teaching in *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 341, 352–3, 98 S.Ct. 2380, 2389, 2390, 57 L.Ed.2d 253 (1978). Moreover, the Magistrate went beyond the call of duty and parsed the record in an attempt to guide and limit the discovery in the future to permissible bounds.

In every respect, the Magistrate acted properly, reasonably, and in accordance with established law in this Circuit. Discovery was properly limited to those areas which affect the claims and defenses of these parties, as outlined in the Order.

The Order of the Magistrate is affirmed. The request for attorneys' fees is denied.

SO ORDERED.

## MEMORANDUM AND ORDER ON MOTION OF NON–PARTY BANK OF NEW ENGLAND, N.A. AND MICHAEL A. McCABE FOR A PROTECTIVE ORDER (# 17A)

ROBERT B. COLLINGS, United States Magistrate.

Blount International, Ltd. (hereinafter, "Blount") filed suit against Schuylkill Energy Resources, Inc. (hereinafter, "SER") in the United States District Court for the Eastern District of Pennsylvania.

The Amended Complaint alleges that on December 29, 1986, Blount and SER entered into a contract pursuant to which Blount, for a stated price, would construct an electrical cogeneration facility for SER in Schuylkill County, Pennsylvania. In Count I, Blount alleges that SER has failed to pay for change orders and thereby materially breached the contract; it seeks a declaratory judgment that SER is in material breach of the contract thereby allowing Blount to suspend work on the project until payment is made. In Count II, Blount alleges that SER failed to make payment for additional work which Blount had to do because of the subsurface conditions at the site about which SER knew but did not inform Blount. Blount also alleges that SER had in its possession mine maps which would have revealed the subsurface problems but SER did not disclose them prior to the signing of the contract. Blount claims that after the maps were disclosed, it was necessary to relocate the plant and revise the foundation design at additional costs which SER refused to pay. Accordingly, Blount seeks a declaratory judgment that the contract was induced by fraud and that Blount is entitled to recission of the contract and payment on the basis of *quantum meruit*. Count III seeks damages for breach of contract in the failure to pay for additional work due to the subsurface conditions encountered. Count IV seeks damages for breach of contract for a specific change order, i.e. the addition of a redundant culm feed system. Count V seeks damages for breach of contract in the failure to pay for the other change orders. Count VI purports to state a claim against two other corporations, Reading Anthracite Company and Reading Anthracite Coal Company, on a theory of misrepresentation in their failure, as parents of SER and previous owners of the land on which the cogeneration plant is being built, to disclose the mining maps and to furnish accurate information about the site. Count VIII is a claim for punitive damages.

SER's Answer pleads as affirmative defenses that Blount's claims are barred due to a failure of consideration, "as a result of the equitable doctrine of estoppel," "as a

result of the equitable doctrine of laches," "as a result of plaintiff's material breaches of the contract," "as a result of waiver," and "because plaintiff has frustrated, hindered and prevented SER from having the project constructed in a timely manner and in accordance with the contract." Lastly, as an affirmative defense, it is pleaded that "[p]laintiff's claims against SER for compensation for work performed in addition to that required by the contract are barred because plaintiff failed to provide SER with notice of such claims in accordance with the contract.

As reported by counsel, the District Judge has declined to issue any declaratory judgment in advance of a trial on the other claims in the Amended Complaint. Discovery has commenced and will continue through the summer of 1990.

As part of discovery, SER caused subpoenae to be issued in the District of Massachusetts and to be served upon the Bank of New England and two of its officers, Michael A. McCabe and James A. Croyle, commanding them to appear for their depositions. Neither the Bank of New England nor any of its officers are named in the Amended Complaint or the Answer as parties or otherwise. However, the Bank of New England together with other banks ("the bank group") provided SER the financing for the construction of the cogeneration plant.

The deposition of Mr. McCabe went forward on November 10 and 11, 1988 but was not completed. The deposition of Mr. Croyle went forward on January 10 and 11, 1989. So far as appears, the deposition of Mr. Croyle was completed. However, SER sought to continue the deposition of Mr. McCabe. Contending that the subject matter of the depositions went beyond permissible bounds and that the depositions are being conducted for improper purposes, the Bank of New England filed a motion for protective order pursuant to Rule 26(c), Fed.R.Civ.P., in the District of Massachusetts on January 27, 1989 seeking a protective order:

(1) limiting the scope of [SER's] examination of Mr. McCabe and any other [Bank of New England] officer or employee to matters which are relevant to the subject matter of the Pennsylvania federal court action ... out of which this miscellaneous action arises; and

(2) directing [SER] to refrain from any further questioning of Mr. McCabe or any other [Bank of New England] officer or employee concerning defendants' threatened, but as yet unfiled, suit against [the Bank of New England] based on uncharged and factually unsupported allegations of "lender liability" and/or "conspiracy."

Motion of Non–Party Bank of New England, N.A. and Michael A. McCabe for a Protective Order (# 17A) at pp. 1–2.

At the time the motion was filed, the undersigned was presiding over a three-week civil jury trial and was unable to hear the motion until the trial was completed. Rather than await a hearing on the motion, counsel agreed to proceed with the continuation of Mr. McCabe's deposition on February 1 and 2, 1989 but not as to the questioning which was the subject of the motion for a protective order.

Matters did not proceed smoothly on February 1 and 2. As a result, on February 5, 1989, the Bank of New England and Mr. McCabe requested further relief pursuant to Rule 30(d), Fed.R.Civ.P. as follows:

[B]ecause of the oppressive, repetitive and irrelevant nature of [SER's counsel's] examination of Mr. McCabe, [the Bank of New England] and Mr. McCabe request that defendants' examination of Mr. McCabe be terminated and that any further deposition testimony of [the Bank of New England] and its officers or employees be restricted to matters which are related to the Pennsylvania action, expressly excluding those subject matter areas which are identified in the accompanying supplemental memorandum.

Motion of Non–Party Bank of New England, N.A. and Michael A. McCabe for Leave to File Supplemental Memorandum in Support of Motion For Protective Order (# 20) at p. 2.

The next day, Blount filed a pleading entitled "Motion ... Joining in Motion of Non–Party for Protective Order and for Costs and Attorneys' Fees Pursuant to 28

U.S.C. § 1927 (# 18)." Three days later on February 9, 1989, SER filed its opposition to the motion for protective order (# 26) in which counsel for SER wrote that:

> The [Bank of New England's] Motion [for protective order] is totally without factual or legal merit and improperly seeks to foreclose Defendants from discovery that is necessary to properly defend this case and to prepare Defendant's claims and counterclaims. For these reasons, the Motion must be denied, with the Bank [of New England] ordered to pay [SER's] cost incurred responding thereto.

Defendants' Opposition to Motion of Bank of New England, N.A. and Michael A. McCabe For Protective Order (# 26) at p. 1.

The increasingly strong rhetoric in these papers reflected a definite escalation of hostilities which commenced with the filing of the Bank of New England's motion for protective order. The escalation culminated in an animated hearing before the undersigned on March 8, 1989 which, at times, took on more the atmosphere of trench warfare than an enlightened and dispassionate discussion of the facts of the case and the applicable law.

Now that the smoke has cleared, a cool-headed analysis can be attempted.

The first principle which governs this case is that parties in a civil case can discover any material "relevant to the subject matter involved in the pending action." Rule 26(b)(1), Fed.R.Civ.P. As the Supreme Court has noted:

> The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman v. Taylor*, 329 U.S. 495, 501 [67 S.Ct. 385, 388, 91 L.Ed. 451] (1947).[12] Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.*, at 500–501 [67 S.Ct. at 388–389].

[12] "[T]he court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." 4 J. Moore, Federal Practice ¶ 26.56[1], p. 26–131 n. 34 (2d ed. 1976).

*Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

However, there are other principles which limit the scope of discovery in certain circumstances. In the situation in which a lawsuit is filed against a party, a court should be satisfied that the lawsuit is not a vehicle for discovering a right of action. 4 Moore's Federal Practice ¶ 26.56[1] at 26–95 n. 3 cited in *MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 52 (1 Cir., 1987). "As a threshold matter, the court should be satisfied that a claim is not frivolous, a pretense for using discovery powers in a fishing expedition." *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 597 (1 Cir., 1980). *See also Milazzo v. Sentry Insurance*, 856 F.2d 321, 322 (1 Cir., 1988).

It should be kept in mind that there is no lawsuit now pending against the Bank of New England. It is not a party to the Pennsylvania action and SER has not otherwise commenced suit against it. As the Ninth Circuit Court of Appeals has noted:

> While discovery is a valuable right and should not be unnecessarily restricted, *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 232 (9th Cir.1979), the "necessary" restriction may be broader when a nonparty is the target of discovery.

*Dart Industries Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9 Cir., 1980). *See also Slater Steel, Inc. v. Vac–Air Alloys Corp.*, 107 F.R.D. 246, 248 (W.D.N.Y., 1985); *Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D.Nev., 1986).

This is not to say that the Bank of New England could not be brought into the Pennsylvania litigation by SER as an additional party on a counterclaim by SER against Blount. Rule 13(h), Fed.R.Civ.P. However, SER has not asserted a counterclaim in its answer and would have to seek leave of Court to do so. *See* Rule 13(f), Fed.R.Civ.P. If leave were granted, the

only claims which could be asserted against the Bank of New England would be the claims which SER could also assert against Blount in a counterclaim; SER could bring no claims against the Bank of New England in the Pennsylvania action which it could not bring against Blount as counterclaims in that action.

Accordingly, while SER should be permitted to discover material "relevant to the subject matter" of the Pennsylvania action, it should not be permitted to take discovery in the Pennsylvania action for the purpose of "discovering" a right of action against the Bank of New England and its officers which could not also be asserted in the Pennsylvania action as a counterclaim against Blount. Put another way, any discovery directed at bringing claims against the Bank of New England which could not also be brought against Blount as a counterclaim in the Pennsylvania action would not be discovery which "bears on, or that could lead to other matter that could bear on, *any issue that is or may be in the case.*" *Oppenheimer Fund v. Sanders, supra*, 437 U.S. at 351, 98 S.Ct. at 2389 (emphasis supplied)

In its papers, SER does not deny that its discovery of the Bank of New England and its officers is, in part, directed at determining facts which might later form the basis of a lawsuit against the bank. In fact, Exhibit C to the Bank of New England's Motion, Etc. (# 17A) is a copy of a bill from SER's present counsel to SER for the month of October, 1988 for $167,674.46 which, in part, reflects attorney's fees for "[r]esearch and prepare complaint against Bank of New England for breaches of its fiduciary duties, breach of contract, fraud, breach of the covenant of good faith and fair dealing, negligence, civil conspiracy, tortious interference with contractual relations, and punitive damages."

This purpose is a factor which I can consider in ruling on the motion for protective order. As the Supreme Court noted in *Oppenheimer:*

In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request

is to gather information for use in proceedings other than the pending suit, discovery is properly denied. See *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 565–8 (S.D.Miss.1976); *Econo–Car International, Inc. v. Antilles Car Rentals, Inc.*, 61 F.R.D. 8, 10 (V.I., 1973), rev'd on other grounds, 499 F.2d 1391 (CA3 1974).

*Oppenheimer, supra,* 437 U.S. at 352–3, note 17, 2d paragraph, 98 S.Ct. at 2390 note 17, 2d Paragraph.

It follows that the Bank of New England and its officers are entitled to a protective order. SER's discovery must be limited to the claims and defenses which have been asserted to date in the Pennsylvania action and any claims or defenses which might yet be raised in the Pennsylvania litigation, including claims which may be brought against the Bank of New England and its officers as additional defendants on counterclaims brought by SER against Blount. Discovery which does not fall within these limits, including discovery of claims which SER might have against the Bank of New England and its officers which could not be brought against it them as additional defendants on counterclaims against Blount, must be prohibited.

In keeping with this conclusion, I shall attempt to be specific with respect to certain areas of inquiry which SER seeks to explore and which the Bank of New England opposes.

First, SER claims that since Blount seeks equitable relief, SER should be able to explore facts which would support defenses to equitable relief, not only the defenses presently contained in the pleadings but also those which may be raised, especially the defense of unclean hands. I agree. However, the defenses are all directed at what Blount did or did not do which disentitles it to equitable relief. SER, therefore, may seek information regarding any communications and transactions between Blount and the Bank of New England in order to discover acts done or statements made by Blount which render its hands unclean. But SER may not, under the guise of defending against Blount's claims

for equitable relief, inquire into the Bank's activities. For example, I can see no basis on which breaches of fiduciary duties which the Bank of New England owed to SER could form the basis of a defense against Blount's claims for equitable relief.

Second, SER may not inquire into facts which could form the basis of "lender liability" of the Bank of New England. Such a claim could not be brought in this action, and whether the Bank of New England has incurred "lender liability" does not affect the validity of Blount's prayers for equitable relief and SER's possible defenses to the prayers.

Third, questions regarding the methods for payment of the Bank of New England's attorney's fees and the alleged refusal of the bank group to pay SER's attorney's fees may not be the subject of inquiry. As with the question of "lender liability," the Bank of New England's and SER's entitlement to compensation for legal fees does not bear on Blount's claims for equitable relief or SER's possible defenses to such claims. Also, a claim against the Bank of New England on the basis of questions about compensation of the Bank and SER for their attorney's fees could not be brought in this action.

Fourth, I find the same to be true of (1) questions regarding the bank groups members' pro rata "security" in the loan proceeds and project assets, (2) alleged disputes among the bank group's members regarding distribution of information and location of bank group meetings, (3) the performance bond backing plaintiff's obligations under the construction contract and possible surety defenses, and (4) the possibility of BNE "selling down" its position on the loan for the project or reducing its own internal rating of the loan.

Since SER is exploring the possibility of suing the Bank of New England for the tort of civil conspiracy, I must consider whether, if the evidence supported such a claim, it is conceivable that SER could bring a claim in this action for the independent tort of civil conspiracy as a counterclaim against Blount with the Bank of New England as an additional defendant, and, if such an issue "may arise" in the case, what discovery on the issue would be permissible. The problem is that SER rather cavalierly speaks of "conspiracies" but never defines the nature of the tort. I do not know what forum's law SER believes would be applicable to its nascent claim of civil conspiracy, but the tort usually involves something more than two entities acting together to commit a garden-variety tort such as fraud. For example, the Supreme Judicial Court of Massachusetts has held that:

> There can be no independent tort for conspiracy unless a situation "where mere force of numbers acting in unison may make a wrong." (citations omitted) And in order to prove an independent tort for conspiracy upon the basis of "mere force of numbers acting in unison," it must be shown that there was some "peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation would not have had." (citations omitted)

*DesLauries v. Shea,* 300 Mass. 30, 33, 13 N.E.2d 932, 935 (1938); *Comerford v. Meier,* 302 Mass. 398, 19 N.E.2d 711, 713 (1939); *Fleming v. Dane,* 304 Mass. 46, 50, 22 N.E.2d 609, 611 (1939); *Neustadt v. Employers Liability Assur. Corp.,* 303 Mass. 321, 325, 21 N.E.2d 538, 540–541 (1939); *Cuddy v. Sweeney,* 7 Mass.App. 880, 881, 386 N.E.2d 805, 806 (1979).

I do not see any basis on which it could be posited that Blount and the Bank of New England in combination had a peculiar power of coercion over SER which they did not have individually, and none has been pointed out to me.

Accordingly, on this record and the rather general argument about "conspiracies" raised by SER, I shall not permit questioning on the use of project "contingency funds" for settlement of the legal disputes between Blount and SER or the Bank of New England's alleged "encouragement" of SER to settle contract disputes with Blount. Whatever coercive power the Bank of New England may have had or has *vis a vis* SER is because of its position; it not because of a peculiar coercive power

which it has only in combination with Blount.

There is one counterclaim which SER conceivably may be able to assert in this action against Blount and add the Bank of New England as an additional defendant on the counterclaim. This is the possible counterclaim based upon fraud and/or misrepresentation. However, these claims would have to be able to brought against both Blount and the Bank of New England as a result of their joint action, not on the basis of acts by the Bank of New England alone. Accordingly, I shall allow SER to question the Bank of New England regarding the Bank's financial or lending relationship with Blount on projects other than the cogeneration plant and the information about Blount's financial condition and corporate reorganization which the Bank of New England had but did not disclose to SER.

Accordingly, it is ORDERED that the Motion of Non–Party Bank of New England And Michael A. McCabe for a Protective Order (# 17A) be, and the same hereby is, ALLOWED to the extent that it is ORDERED, pursuant to Rule 26(c), Fed.R. Civ.P., that:

(1) Further discovery of the Bank of New England in the Pennsylvania action shall be limited to the subject matter of the Pennsylvania action, that is,

(a) to facts relating to any claims which Blount has brought against SER in the Pennsylvania action,

(b) to facts relating to any defenses which SER has asserted or may assert against Blount's claims in the Pennsylvania action,

(c) to facts relating to any counterclaims which SER might assert against Blount in the Pennsylvania action, and

(d) to facts relating to any counterclaims which SER could bring against the Bank of New England as an additional defendant in counterclaims against Blount in the Pennsylvania action.

(2) Consistent with the foregoing, further discovery of the Bank of New England in the Pennsylvania action

shall not be had respecting the following areas:

(a) the Bank of New England's alleged "fiduciary duties" in connection with the facility,

(b) the Bank of New England's awareness of "lender liability" accusations made by defendants' counsel at the deposition of Blount's corporate officer, William Hudson, and the Bank of New England's alleged concerns about "lender liability,"

(c) the Bank of New England's seminars on "lender liability,"

(d) the method of payment of legal fees for the Bank of New England's counsel under the loan documents,

(e) the reasons for the alleged refusal of the bank group to pay SER's legal fees and interpretation of legal documents regarding the same,

(f) the Bank of New England's alleged "duty of candor and fair dealing" and "disclosure" with the bank group and the applicability of that alleged duty to the Bank of New England's transmittal of information to the bank group regarding Blount's financial condition and reorganization,

(g) the use of project "contingency funds" for settlement of the legal disputes between Blount and SER,

(h) the Bank of New England's alleged "encouragement" of SER to settle contract disputes with Blount,

(i) the bank group members' pro rata "security" in the loan proceeds and project assets,

(j) whether SER can incur debt without the Bank of New England's approval,

(k) the performance bond backing SER's obligations under the construction contract and possible surety defenses,

(l) alleged disputes among bank group members regarding distribution of information and location of bank group meetings, and

(m) possibility of the Bank of New England "selling down" its position on

the loan for the plant or reducing its own internal rating of the loan.

(3) Consistent with the foregoing, further discovery of the Bank of New England in the Pennsylvania action may be had respecting the following areas:

(a) the Bank of New England's alleged financial and/or lending relationship with plaintiff on projects other than the cogeneration plant, and

(b) the Bank of New England's alleged "disclosure" to SER and the applicability of that alleged duty to the Bank of New England's transmittal of information to SER regarding Blount's financial condition and corporate reorganization.

It is FURTHER ORDERED that the Motion of Non–Party Bank of New England And Michael A. McCabe for a Protective Order (# 17A) be, and the same hereby is, DENIED to the extent that it seeks an order terminating the deposition pursuant to Rule 30(d), Fed.R.Civ.P. The deposition shall not be terminated because with the Protective Order in place, I do not see a danger of the resumed deposition being conducted in "bad faith" or "in such manner as unreasonably to annoy, embarass, or oppress the deponent."

It is FURTHER ORDERED that the Motion of Non–Party Bank of New England And Michael A. McCabe for a Protective Order (# 17A) be, and the same hereby is, DENIED without prejudice to the extent that it seeks an order that SER pay the Bank of New England's expenses, including its reasonable attorney's fees, incurred in connection with obtaining the protective order.

It is FURTHER ORDERED that the Motion Of Plaintiff, Blount International, Ltd., Joining In Motion Of Non–Party For Protective Order And For Costs And Attorneys' Fees Pursuant To 28 U.S.C. § 1927(# 18) be, and the same hereby is, ALLOWED to the extent that a Protective Order has been issued, DENIED without prejudice to the extent that Blount seeks an award of costs, including reasonable attorney's fees, incurred in obtaining the protective order, and DENIED to the ex-

tent that Blount seeks an award of costs, including reasonable attorney's fees, incurred as a result of the depositions of the Bank of England and its officers which SER has taken to date. While SER's counsel may have "unreasonably" multiplied the proceedings, I do not, on this record, find that he has done so "vexatiously."

It is FURTHER ORDERED that SER's request that the Bank of New England be ordered to pay SER's costs, including attorney's fees, in responding to the motion for protective order be, and the same hereby is, DENIED.